# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL GOLDEN FOODS, INC., an Illinois corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. |
| SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI, and SOYYIGIT GROUP | ) ) ) ) ) | |
| Defendants. | ) | |

### COMPLAINT FOR INDEMNITY, BREACH OF CONTRACT, INTERFERENCE WITH CONTRACT, AND OTHER RELIEF

NOW COMES the Plaintiff, INTERNATIONAL GOLDEN FOODS, INC., by and through its Attorney, Joseph M. Williams, and for its complaint against the Defendants, SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI and SOYYIGIT GROUP, and in support thereof, states as follows:

### JURISDICTION AND VENUE

1. This is an action premised upon diversity of citizenship, the Plaintiff, INTERNATIONAL GOLDEN FOODS, INC., being an Illinois corporation with its principal place of business in Illinois; Defendant, SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI and SOYYIGIT GROUP, being an entity located in Istanbul, Turkey, and doing business in Illinois, the United States, the Middle East and elsewhere, based upon 28 USC, §1332(a)(1)(2).

2. The amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00), 28 USC, §1332(b).

3. Venue in this judicial district is appropriate, premised upon 28 USC, §1391(a)(2).

### FACTS COMMON TO ALL COUNTS

4. That the Plaintiff, INTERNATIONAL GOLDEN FOODS, INC. (hereinafter "IGF"), is an Illinois corporation having its principal business address at 819 Industrial Drive, Bensenville, Illinois 60106.

1

5. That for many years, IGF has been in the business of importing, exporting, selling, distributing and marketing food products.

6. That in that business, IGF has become known as a source of the very highest quality food products, whether directly sourced by IGF or marketed by them in cooperation with other food vendors and food product sources.

7. That the Defendants, SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI and SOYYIGIT GROUP (hereinafter "SOYYIGIT"), are located in Istanbul Turkey, and are the manufacturers and source vendor of a product marketed under the mark KENT BORINGER TRIX drink mix powder (hereinafter "Drink Mix") in the United States.

8. That on or about April 1, 2007, SOYYIGIT and IGF entered into an oral first agreement with SOYYIGIT, where IGF was to be the actual <u>exclusive</u> vendor for the Drink Mix products sold in the US.

9. That the oral agreement of the parties, which preceded any orders of products, was done between Chicago, Illinois and Istanbul, Turkey.

10. That prior to reaching that agreement, SOYYIGIT made oral representations that it had all the necessary trademark rights to the products being sold under the Kent Boringer Trix Drink Mix trademark, and that it had no problems with the Kent Boringer Trix Drink Mix trademark.

11. That on or about June 14, 2006, SOYYIGIT applied for an Intent to Use Trademark application in the US Patent and Trademark Office, alleging that they had a bona fide intent to use the trademark KENT BORINGER TRIX (hereinafter "KBT") Trademark in the US at some still unknown date in the future, despite the fact it was actually using the trademark in the US on drink mix products for a period of at least several years prior to their application for an Intent to Use Application for trademark registration.

12. That General Mills IP Holding, II, LLC (hereinafter "General Mills") filed an Opposition proceeding before the Trademark Trial and Appeal Board (hereinafter "TTAB") against the KBT trademark application in the US. Patent and Trademark Office, before the Trademark Trial and Appeal Board at No. 91178602.

13. That the Opposition proceeding was ongoing during the placement of many sales orders by IGF to SOYYIGIT, and at no time did SOYYIGIT inform IGF of the General Mills' opposition to its registration of the KBT Drink Mix trademark in the US.

14. That prior to its agreement with IGF, SOYYIGIT sold the KBT drink mix products sold by distributors/importers other than IGF, which practice has continued throughout and during the allegedly "exclusive" relationship with IGF.

15. That in effect, SOYYIGIT never honored its agreement with IGF to allow it to act as the "exclusive" distributor, in fact, despite conveying a false impression of exclusivity to all

and sundry through use of the legend printed on the cans with IGF's name, address and telephone.

16. That as a result of this labeling, General Mills believed that even in the face of contrary evidence, that IGF was, in fact, the exclusive distributor of these products on behalf of SOYYIGIT.

17. That SOYYIGIT failed to disclose the existence of or SOYYIGIT's relationship with the other "distributors" to IGF, or that other entities purchased Kent Boringer Trix Drink Mix from it and sold it in whatever location of that said distributor, and to whatever customers that distributor had, acquired or sold to.

18. That SOYYIGIT placed a printed legend on the sides of the cans of the Kent Boringer Trix Drink Mix product sold in the US bearing the wording, "Exclusive distributor, International Golden Foods, 819 Industrial Drive, Bensenville, IL 60106" and listed Golden Foods' toll free phone number and the TRIX web address.

19. That IGF, however, was not in fact the exclusive distributor as was first revealed through various disclosures made during the pendency of the information acquired in discovery in an infringement cause filed in Minnesota against both IGF and Soyyigit, Case No. 09 CV 010101.

20. That on or about May 9, 2009, General Mills served a complaint (hereinafter "the Complaint") in the underlying cause, which alleged SOYYIGIT, the Soyyigit Group and IGF had infringed the various Trix trademarks owned by General Mills in the US., for food and related products, which included United States Trademark Registration Nos. 603,700, 1,553,126, 1,552,170, 1,518,803, 1,778,442, 1,923,941, 3,153,686, 2,678,304 and 2,962,524 (hereinafter the "TRIX Registrations").

21. That General Mills alleged that it had continuously used TRIX on its cereal, yogurt and cereal bar products since the date of first use for each that is set forth above.

22. That General Mills has also used TRIX in connection with frozen novelties, fruit-flavored snacks, and flavored milk in the past five years.

23. That General Mills currently uses TRIX as the primary brand name for its fruit-flavored cereal, yogurt, and cereal bars.

24. That immediately upon being served with that complaint, IGF stopped all sales and distribution of KBT Drink Mix product and the related KBT gelatin mix products prepared for a possible recall; notified its customers that it had stopped selling KBT due to non-health or safety issues and conducted an investigation of the merits of General Mills' claims so as to mitigate any damage that might have been assessed against IGF due to General Mills' claims.

25. That in addition, IGF, by Court order, was required to recall the Kent Boringer Trix Drink Mix product it had sold in the few short weeks after being served with the complaint.

26. That SOYYIGIT filed its appearance in the Minnesota case in July 2009.

27. That at a meeting in Chicago, on or about July 2-3, 2009, to discuss the complaint and the defense thereof, SOYYIGIT orally represented that it would indemnify IGF as its distributor for all costs and losses incurred in that litigation.

28. That as the case had been filed in Minnesota, a State where IGF did almost no business, had no offices, and where SOYYIGIT had no offices, IGF was required to retain a Chicago trademark defense counsel, Elizabeth H. Schoettly, an attorney who has worked with IGF for over twenty years, and pursuant to Minnesota federal local rules, also retained counsel in Minnesota to defend its position(s).

29. That SOYYIGIT caused IGF to rely upon its oral assurances that it had full trademark rights in the US, that there were no difficulties with the registration for Kent Boringer Trix, and that it would handle any difficulties or issues such as the litigation filed by General Mills.

30. That during the ensuing months, IGF has incurred substantial fees for its Chicago trademark counsel, Minnesota local counsel, filing fees, court costs after May 2009, including protecting SOYYIGIT, fees for the trademark counsel that IGF retained, which counsel also represents SOYYIGIT, and for related ancillary costs.

31. That Subpoenas were also issued to customers of IGF, which resulted in communications to them from General Mills' counsel and, in some instances, interruption of business relations regarding products in the IGF line unrelated to KBT or any powder food or drink mix products, causing lost sales and profits to IGF, in excess of $100,000.00.

32. That as a result of these actions, in the discovery process by General Mills, sales of other products by IGF to its customers were lost as a direct result of the issuance of those subpoenas, causing lost sales and lost business opportunities of at least $500,000.00.

33. That those subpoenas, dragging IGF's customers into a litigation that should have focused on SOYYIGIT, resulted in many lost sales, lost contractual opportunities, and losses of business to IGF, in excess of $450,000.00.

34. That IGF also paid from its own business, all the fees for local Minnesotaa counsel, reimbursing Ms. Schoettly for the monies she paid on SOYYIGIT's behalf to local counsel in Minnesota so as to prevent local counsel, Ms. Holly Newman of Mackall, Crounse and Moore, from withdrawing its representation capacity for IGF in October 2009, when that law firm's bills had not been paid for several months, for substantial sums.

35. That business plans that were underway when by IGF, as a result of this litigation, were temporarily postponed and time that would have been spent on business development was spent in days-long conferences with the principals of the SOYYIGIT defendants, so as to procure

4

payment of the fees and costs they had agreed to pay and present a cogent joint defense to the litigation.

36. That adding to the business losses, the stress of handling the work and information gathering that was not provided by SOYYIGIT, paying the bills not covered by SOYYIGIT, and working to get lead counsel paid, including telephone conferences at any hour of the day or night (due to the eight-hour time difference between Istanbul, where Soyyigit is located, and Chicago), caused significant health problems for IGF's principal, MANSOUR AMIRAN, leading to several visits to the hospital where the diagnosis was stress-related health problems.

37. That IGF has confronted several instances where counsel, both lead counsel and local counsel in Minnesota, threatened to withdraw due to non-payment of their fees, all while SOYYIGIT was taking up inordinate amounts of time discussing ways to minimize their total legal bills.

38. That SOYYIGIT also has caused IGF to lose approximately $100,000.00 in sales of drink mix and related SOYYIGIT products, which were recalled due to the injunction entered against them on June 23, 2009, the costs of storage and disposal of the Kent Boringer Trix Drink Mix product that it could not sell in the US, cannot export out of the US for sale, and cannot otherwise dispose of due to the terms of the injunction.

39. That IGF has a company policy that from the first indication of a matter of trademark infringement of anothers' trademark, that product is immediately pulled from inventory, and investigation of the surrounding facts made, and full cooperation to the rightful holder of trademark rights is given to the rightful trademark claimant.

40. That this policy is rooted in IGF's respect for the trademark laws of this and all nations where it does business, and as part of its pledge to customers and the business community, to honor the rights and property of other businesses.

41. That SOYYIGIT has cost IGF an amount in excess of $1.5 million by its action of selling to IGF a product that had neither trademark clearance, nor trademark registration, and which product brought IGF into litigation that would not have occurred, but for SOYYIGIT's failure to investigate whether or not it had the right to use a trademark on a food or beverage product containing the term 'TRIX' in the United States.

## COUNT I
### Breach of Contract
### Indemnification

NOW COMES the Plaintiff, INTERNATIONAL GOLDEN FOODS, INC. (hereinafter "IGF"), by and through its Attorney, Joseph M. Williams, and for Count I of its complaint against the Defendants, SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI and SOYYIGIT GROUP (hereinafter "SOYYIGIT"), states as follows:

1-41. IGF repeats and realleges paragraphs 1 through 41 of Jurisdiction and Venue and Facts Common to All Counts as and for paragraph 1 through 41 of this Count 1, as though fully stated herein.

42. That on or about July 2-3, 2009, IGF and SOYYIGIT made an oral agreement, that SOYYIGIT would defend and hold harmless IGF in the case of *General Mills IP Holdings II, LLC vs. Soyyigit, et al.,* Case No. 09 CV 010101, then pending (hereinafter "trademark case").

43. That as a part of that agreement, SOYYIGIT also agreed to retain and pay for Illinois trademark and Minnesota local counsel to defend both party Defendants in the "trademark case."

44. That as consideration thereof, IGF agreed to fully cooperate and assist counsel on behalf of both party Defendants in defense of all claims and as its USA representative.

45. That since May 2009, IGF has incurred substantial fees and costs in excess of $89,000.00 relating to the defense of itself in the "trademark case."

46. That relying on that agreement, IGF has paid fees and costs to local and Minnesota counsel relating to the trademark case.

47. That IGF performed all of the terms and conditions of its indemnification agreement, including but not limited to cooperating with respective counsel, fronting expenses and doing all research, etc. at its expense, even though SOYYIGIT reaped much greater benefits by IGF's co-joining in its defense.

48. That notwithstanding the agreement between the parties, SOYYIGIT has failed, neglected or refused to hold IGF harmless, indemnify or reimburse IGF for the costs and fees incurred during the litigation.

49. That IGF has made demand upon SOYYIGIT to so honor its indemnification agreement.

50. That having failed to so do, SOYYIGIT has caused IGF to incur damages for an amount in excess of $89,000.00.

WHEREFORE, the Plaintiff, INTERNATIONAL GOLDEN FOODS, INC., prays this Court enter a judgment against the Defendants, SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI and SOYYIGIT GROUP, for an amount in excess of $89,000.00, plus costs and its fees for this action.

## COUNT II
## Breach of Contract
## Exclusivity

NOW COMES the Plaintiff, INTERNATIONAL GOLDEN FOODS, INC. (hereinafter "IGF"), by and through its Attorney, Joseph M. Williams, and for Count II of its complaint against the Defendants, SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI and SOYYIGIT GROUP (hereinafter "SOYYIGIT"), states as follows:

1-29.   IGF repeats and realleges paragraphs 1 through 29 of Jurisdiction and Venue and Facts Common to All Counts as and for paragraph 1 through 29 of this Count II, as though fully stated herein.

30.   That pursuant to the 2007 oral agreement for exclusivity (see paragraph 5), IGF initiated the marketing of Kent Boringer Trix Drink Mix and related products.

31.   That in conjunction therewith, IGF's name appeared on the canned labels of the Kent Boringer Trix products (see ¶15), as its "exclusive" distributor.

32.   That the oral agreement of the parties was to allow IGF the exclusive right to open up USA markets and make sales of the drink mix and related products, and be entitled to a fee for each sale.

33.   That as the sole USA distributor of the Drink Mix, IGF expended sums to market the products so as to increase the commissions it would receive on all sales made.

34.   That IGF would not have made an agreement with SOYYIGIT to allow them to describe IGF as their sole and exclusive agent unless they were, in fact, provided with such right and/or were receiving commissions or profits/fees on all sales of this Drink Mix in the USA.

35.   That phrase "sole and exclusive distributor" as described on the Drink Mix labels, was understood by both parties to the agreement to give IGF the exclusive right to sell this product and the attendant right to recover commissions or make profits on all sales made in the USA.

36.   That IGF would not have incurred expenses and costs of advertising, marketing and selling the Drink Mix and related products of SOYYIGIT if it did not have this exclusive right to so sell.

37.   That IGF has incurred substantial costs and lost profits as a result of SOYYIGIT's failure to honor this agreement.

38.   That IGF has been damaged for sums in excess of $950,000.00.

WHEREFORE, the Plaintiff, INTERNATIONAL GOLDEN FOODS, INC., prays this Court enter a judgment against the Defendants, SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI and SOYYIGIT GROUP, for an amount in excess of $950,000.00, plus costs and its fees for this action.

## COUNT III
## Misrepresentation

NOW COMES the Plaintiff, INTERNATIONAL GOLDEN FOODS, INC. (hereinafter "IGF"), by and through its Attorney, Joseph M. Williams, and for Count III of its complaint against the Defendants, SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI and SOYYIGIT GROUP (hereinafter "SOYYIGIT"), states as follows:

1-28. IGF repeats and realleges paragraphs 1 through 28 of Jurisdiction and Venue and Facts Common to All Counts as and for paragraph 1 through 28 of this Count III, as though fully stated herein.

29. That at the time of the agreement for exclusivity, SOYYIGIT was the owner of a KBT mix powder drink and related KBT products for which it represented to IGF that it had an absolute right to advertise, market and sell in the United States.

30. That, in fact, SOYYIGIT did not have this right, based upon various trademark registrations of General Mills, as well as <u>unapproved</u> trademark applications before the US Patent & Trademark Office, when, in fact, there was an Opposition filing by General Mills before the "TTAB".

31. That at the same time, IGF was advised by SOYYIGIT and, in fact, made agreement with them, to have the "exclusive" right to advertise, sell and market these products.

32. That these agreements and representations as to the right to sell and exclusivity were made by SOYYIGIT with the intent and purpose of deceiving and defrauding IGF and inducing it to advertise, market and sell these products, allow its name to appear on the labels of its products and IGF continued to sell and market these products through third parties, all for SOYYIGIT's own use, benefit and profit, but to the detriment and expense of IGF.

33. That IGF believed and relied upon these representations and, in so doing, was induced to buy, sell, market and advertise the KBT products of SOYYIGIT, paying, advancing and expending sums in excess of $89,000.00.

34. That as SOYYIGIT well knew at all times of the making, their representations were and are false, in that it did not and does not have the right to use the TRIX trademark name in the USA and did not and never has provided IGF with the "exclusive" right to market KBT products and it had never intended to allow IGF this right nor complete its trademark application.

35. That with this intent and for the purpose of inducing IGF to buy, advertise, market and sell the KBT products, SOYYIGIT falsely and fraudulently represented the claims of its trademark right and exclusivity to IGF.

36. That as a result, IGF has sustained great damage(s) and did expend and became liable for large sums of money, in products sold, products and profits made by unknown third parties, costs of litigation, counsel and a duty to destroy all products in its possession and control pursuant to the order of the Court in the General Mills' litigation, all to its damages for amounts in excess of $500,000.00.

WHEREFORE, the Plaintiff, INTERNATIONAL GOLDEN FOODS, INC., prays this Court enter judgment in its favor and against the Defendants, SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI and SOYYIGIT GROUP, in the amount of $1.5 million, plus attorney's fees and costs.

Respectfully submitted,


By: /s/ Joseph M. Williams


Joseph M. Williams
Attorney for Plaintiff
810 N. Arlington Heights Road
Itasca, IL 60143
(630) 346-4472
Atty No. 03128789