UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| INTERNATIONAL GOLDEN FOODS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.: 10 CV 906 (CRN) |
| | ) | The Honorable Judge Norgle |
| SOYYIGIT GIDA SANAYI VE TICARET | ) | Magistrate Mason |
| ANONIM SIRKETI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT, SOYYIGIT GIDA'S MOTION TO DISMISS

Defendant, Soyyigit Gida Sanayi ve Ticaret Anonim Sirketi ("Soyyigit")[1], by its attorneys, pursuant to Fed.R.Civ.P. 12(b) (6), hereby moves for dismissal of plaintiff, International Golden Foods, Inc.'s, Complaint with prejudice. In support of its motion, Soyyigit submits herewith the attached Memorandum of Law.

WHEREFORE, defendant, Soyyigit Gida Sanayi ve Ticaret Anonim Sirketi, respectfully requests entry of an Order dismissing the plaintiff, International Golden Foods, Inc's, Complaint with prejudice; awarding Soyyigit its costs incurred in this action and any further relief it deems just and appropriate.

---

[1] Plaintiff's complaint also names "Soyyigit Group" as a defendant. There is, however, no such entity and service has thus been accomplished only upon Soyyigit Gida.

Date:  September 10, 2010

s/James J. Sipchen
James J. Sipchen (IL Bar No. 6226113)
Amy J. Thompson (IL Bar No. 6244011)
Matthew J. Ligda (IL Bar No. 6229719)
Pretzel & Stouffer, Chartered
One South Wacker Drive - Suite 2500
Chicago, Illinois 60606
Telephone:    (312) 578-7442
Fax:          (312) 346-8242
E-Mail:       jsipchen@pretzel-stouffer.com
*Attorneys for Defendants,*
*Soyyigit Gida Sanayi Ve Ticaret Anonim Sirketi*


Of Counsel:
Michael A. Grow
Eric S. Baxter
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 857-6000 (telephone)
(202) 857-6395 (facsimile

**UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| INTERNATIONAL GOLDEN FOODS, INC., | |
| *Plaintiff,* | Case No. 10-CV-906 (CRN) |
| *v.* | **DEFENDANT SOYYIGIT GIDA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** |
| SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI, *et al.,* | |
| *Defendants.* | |

The complaint filed in this matter by Plaintiff International Golden Foods, Inc. ("IGF") and served upon Defendant Soyyigit Gida Sanayi ve Ticaret Anonim Sirketi ("Soyyigit")[1] fails to state a claim upon which relief may be granted. Accordingly, under Federal Rule of Civil Procedure 12(b)(6), the complaint should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

The Complaint contains the following allegations.[2] IGF is in the business of importing, exporting, selling, distributing and marketing food products. Compl. ¶ 5. Soyyigit, a Turkish company, allegedly manufactures and sells fruit-flavored powdered drink mixes under the mark KENT BORINGER TRIX. *Id.* ¶ 7. IGF asserts that, on or about April 1, 2007, Soyyigit and IGF entered into "an oral first agreement" whereby "IGF was to be the actual <u>exclusive</u> vendor for the Drink Mix products sold in the U.S." *Id.* ¶ 8. Prior to reaching the distributorship

---

[1]  The Complaint in this matter also names "Soyyigit Group" as a defendant. There is, however, no such entity and service has thus been completed only upon Soyyigit Gida.

[2]  The facts set forth are drawn directly from IGF's complaint and are accepted as true for purposes of this motion only.

agreement, Soyyigit purportedly "made oral representations that it had all the necessary trademark rights to the products being sold under the Kent Boringer Trix Drink Mix trademark, and that it had no problems with the Kent Boringer Trix Drink Mix trademark." *Id.* ¶ 10.

On approximately May 9, 2009, the food company General Mills filed a complaint against Soyyigit and IGF in Minnesota, alleging that they were infringing various trademarks owned by General Mills for use in connection with its TRIX-brand "cereal, yogurt, and cereal bar products." *Id.* ¶¶ 20-21. Upon being served with the complaint, IGF claims that it "stopped all sales and distribution of the [Kent Boringer Trix] Drink Mix product" and was "required to recall the Kent Boringer Trix Drink Mix product it had sold." *Id.* ¶¶ 24-25.

Approximately two months later, in July 2009, Soyyigit and IGF allegedly met "to discuss the [General Mills] complaint and the defense thereof." *Id.* ¶ 27. IGF claims that, during that meeting, Soyyigit "orally represented that it would indemnify IGF as its distributor for all costs and losses incurred in that litigation." *Id.*

IGF's "Chicago trademark counsel" allegedly represented both IGF and Soyyigit in the Minnesota litigation. *Id.* ¶ 30. During the course of that representation, IGF allegedly learned that it "was not in fact the exclusive distributor" of Soyyigit's products. *Id.* ¶ 19. Furthermore, IGF claims it has never been indemnified by Soyyigit as allegedly promised. Finally, it claims to have suffered extensive other damages as a result of Soyyigit's non-compliance with the alleged exclusivity agreement.

## ARGUMENT

IGF's Complaint asserts three causes of action based upon these allegations: Count I is a contract claim for breach of the alleged indemnification agreement; Count II

is a contract claim for breach of the alleged exclusivity agreement; and Count III is for

misrepresentation. Each of these claims should be dismissed for failure to state a claim.

### A. IGF Has Failed To State a Claim in Count I for Breach of the Alleged Indemnification Agreement

Count I of IGF's complaint alleges that Soyyigit breached an oral agreement to

indemnify IGF for expenses incurred in the Minnesota litigation. According to IGF, the alleged

oral agreement contemplated that IGF would act as Soyyigit's "USA representative,"

"cooperating with respective counsel, fronting expenses and doing all research, etc. at its [own]

expense." Compl. ¶¶ 44-47. The "respective counsel" would be IGF's own "Chicago trademark

defense counsel, Elizabeth H. Schoettly, an attorney who ha[d] worked with IGF for over twenty

years." *Id.* ¶ 28. Ms. Schoettly allegedly was to represent both parties, *id.* ¶ 30, and Soyyigit

would indemnify IGF for all the expenses, *id.* ¶ 27. Even if this purported agreement existed, it

was void *ab initio* because it violated the Illinois Rules of Professional Conduct.

Illinois courts will not enforce a contract "if it is injurious to the interests of the public,

contravenes some established interest of society, violates some public statute, is against good

morals, tends to interfere with the public welfare or safety, or is at war with the interests of

society or is in conflict with the morals of the time." *In re Estate of Feinberg*, 235 Ill.2d 256,

265 (2009), *cert. denied*, 130 S. Ct. 3354 (2010) (quoting *Vine St. Clinic v. HealthLink, Inc.,* 222

Ill.2d 276, 296 (2006)). It is well established that the Illinois Supreme Court Rules, including the

Rules of Professional Conduct, are "expressions of public policy." *Richards v. SSM Health

Care, Inc.*, 311 Ill.App.3d 560, 564 (1st Dist. 2000). Thus, agreements that directly contravene

the Rules are unenforceable. *Woods v. Sw. Airlines, Co.*, 523 F. Supp. 2d 812, 824-25 (N.D. Ill.

2007) (refusing to enforce fee-sharing agreement that violated professional rules of conduct,

because "a court cannot enforce an agreement that is contrary to public policy"); *Richards*, 311

Ill.App.3d at 564 ("Contracts between lawyers that violate Rule 1.5 are against public policy and cannot be enforced."); *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill.2d 333, 341-42 (1989) (refusing to enforce contract that violated rules of professional conduct).

Here, the alleged oral agreement for indemnification violated Rule of Professional Conduct 1.7. This Rule prohibits an attorney from representing two clients simultaneously if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client," Ill. R. Prof. Conduct 1.7(a)(2), unless "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client," Rule 1.7(b)(i), and "each affected client gives informed consent," Rule 1.7(b)(4).[3] IGF alleges that it and Soyyigit shared counsel pursuant to the indemnification agreement, but fails to allege that either it or Soyyigit gave informed consent to the highly predictable conflict of interest, which in fact has arisen between them. Acceptance of Soyyigit as a client by IGF's counsel under these circumstances contravened Rule 1.7, and as such, the agreement is void and unenforceable. Count I of IGF's complaint must accordingly be dismissed.

Count I is also unenforceable for lack of definiteness and consideration. "The principles of contract state that in order for a valid contract to be formed, an 'offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain.'" *Acad. Chi. Publishers v.*

---

[3] The current version of Rule 1.7, which is cited, came into effect on June 1, 2010. However, the applicable sections of the current Rule 1.7 ((a)(2), (b)(1) and (b)(4)), are functionally identical to former Rule 1.7(b)-(c). The singular salient difference is that the former rule prescribed the disclosure required to achieve "informed" consent "[w]hen representation of multiple clients in a single matter [was] undertaken." *See* Repealed Version, ILCS Rules of Prof. Conduct, Rule 1.7(c), available at *http://www.state.il.us/court/supremecourt/rules/Art_VIII/ArtVIII.htm#1.7* (last accessed Sept. 7, 2010). The current version merely requires informed consent without prescribing specific disclosures.

*Cheever*, 144 Ill.2d 24, 29 (1991) (quoting 1 Williston, <u>Contracts</u> §§ 38 through 48 (3d ed. 1957); 1 Corbin, <u>Contracts</u> §§ 95 through 100 (1963)). "Although the parties may have had and manifested the intent to make a contract, if the content of their agreement is unduly uncertain and indefinite no contract is formed." *Id.* (citing 1 Williston § 37; 1 Corbin § 95). IGF's complaint alleges essentially nothing more than that IGF would "fully cooperate," "fronting expenses and doing all research, etc.," Compl. ¶¶ 44, 47, if Soyyigit would fully indemnify, *id.* ¶ 47. There are no allegations regarding what it meant to "fully cooperate" and thus no basis upon which the Court could determine if or when a breach by IGF had occurred. Moreover, the Complaint fails to identify what specific obligations — if any — IGF had to Soyyigit. There is no allegation that IGF agreed to let Soyyigit control the course of the litigation or direct IGF's "Chicago trademark defense counsel" of "over twenty years." In other words, the alleged oral agreement allowed IGF to control the litigation, while Soyyigit simply paid, thus evidencing a clear lack of consideration. Dismissal of Count I is also warranted on these grounds.

**B.      IGF Has Failed To State a Claim in Count II for Breach of the Alleged Exclusivity Agreement**

Count II of IGF's complaint claims that Soyyigit breached an agreement for IGF to be its exclusive distributor. This claim must be dismissed for two reasons. First, the alleged agreement as described in the Complaint is unenforceable because it lacks essential terms. Second, the claim is barred by the statute of frauds.

        1.      The alleged exclusivity agreement is unenforceable for lack of <u>essential terms</u>.

To state a claim for breach of contract under Illinois law, a plaintiff must allege facts sufficient to establish four elements: (1) "the existence of a valid and enforceable contract ***containing both definite and certain terms***"; (2) "performance by the plaintiff"; (3) "breach of the contract by the defendants"; and (4) "injury to the plaintiff." *Ken-Pin, Inc. v. Vantage*

*Bowling Corp.*, No. 02 C 7991, 2004 WL 783092, at *3 (N.D. Ill. Jan. 20, 2004) (citing

*Bensdorf & Johnson, Inc. v. N. Telecom Ltd.*, 58 F. Supp.2d 874, 877 (N.D. Ill. 1999))

(emphasis added). Here, the complaint fails to satisfy the first prong of this test — the purported

exclusive distributorship, as alleged, lacks the "definite and certain terms" necessary to state a

claim for relief.

The analysis in *Ken-Pin, Inc. v. Vantage Bowling Corp.* is instructive. There, the plaintiff

had accepted the defendant's written offer to become a distributor of the defendant's

computerized scoring systems for bowling alleys. *Ken-Pin, Inc.*, 2004 WL 783092 at *3. After

the plaintiff had acted as a distributor for several years, however, the defendant appointed an

exclusive distributor for the entire United States, thereby eliminating plaintiff's business.

Plaintiff sued for breach of the distributorship agreement. The court dismissed the claim because

the agreement was neither "sufficiently definite nor certain with respect to numerous essential

terms." *Id.* Specifically, the court stated as follows:

> There is no way for the Court to determine, either from the complaint or from the
> agreement itself, the duration of the contract, the geographical area involved, the
> pricing scheme, the nature and extent of incidental services to be performed,
> standards of performance, or the means of termination.

*Id.* Such terms — and most particularly the "duration and sales quotas" — were deemed

"essential terms of a distribution agreement." *Id.*; *see also Magid Mfg. Co. v. U.S.D. Corp.*, 654

F. Supp. 325, 333 (N.D. Ill. 1987) ("Under Illinois law, terms such as duration and sales quotas

are considered essential terms of an agreement between a manufacturer and a distributor.").

Without such terms, "the Court ha[d] no way of assessing whether or when a breach occurred."

*Id.* Accordingly, the contract was "unenforceable," and the claim for breach was dismissed. *Id.*;

*see also Bensdorf & Johnson*, 58 F. Supp. 2d at 878 ("The lack of these terms is fatal to a general

distributorship contract because it renders the contract unenforceable by making it impossible for

the court to tell when a breach occurs."); *Kraftco Corp. v. Kolbus*, 1 Ill.App.3d 645, 639 (4th

Dist. 1971) (holding that distributorship agreement that "fixes no time for its operation" is

"terminable at the will of either party").

Like the distributorship agreements in *Ken-Pin*, *Bensdorf & Johnson*, and *Kraftco*,

Soyyigit's alleged oral agreement with IGF lacks essential terms. The complaint is devoid of

any allegations regarding duration, pricing scheme, sales quotas, standards of performance, or

means of termination. Under such conditions, there is no way for the Court to know if or when a

breach has occurred. Accordingly, the alleged contract is unenforceable, and IGF's claim for

breach should be dismissed.

> 2.      The alleged agreement violates the statute of frauds.

Count II must also be dismissed for failure to comply with the Illinois statutes of frauds.

"Under Illinois law, a distributorship is generally considered a contract for the sale of goods"

governed by Article 2 of the Uniform Commercial Code. *Bensdorf & Johnson Inc.*, 58 F. Supp.

2d at 879. Under the Uniform Commercial Code, such a contract "cannot be enforced unless it

was reduced to writing." *Id.* Specifically, the Code requires that

> [A] contract for the sale of goods for the price of $500 or more is not enforceable
> by way of action or defense unless there is some writing sufficient to indicate that
> a contract for sale has been made between the parties and signed by the party
> against whom enforcement is sought . . . .

810 ILCS 5/2-201(1). IGF's complaint expressly states that the alleged contract contemplated

the sale of goods far in excess of $500 and that it was made orally, not in writing. Compl. ¶¶ 8,

31-33, and Count III ¶ 33. Thus, the fact that the alleged agreement "was not reduced to writing

is fatal to that claim." *Bensdorf & Johnson Inc.*, 58 F. Supp. 2d at 879; *see also Bell Fuels, Inc.*

*v. Chevron U.S.A., Inc.*, No. 99 C 2586, 2000 WL 305955, at *4 (N.D. Ill. Mar. 21, 2000)

("Because distributorship agreements are contracts for the sale of goods, and because the price of the lubricants at issue is well over $500, the statute bars the alleged oral contract.").

Alternatively, Count II is barred by the general statute of frauds addressing contracts extending for more than one year. In relevant part, that statute provides that "any agreement that is not to be performed within the space of one year from the making thereof" must "be in writing, and signed by the party to be charged therewith." 740 ILCS 80/1. "[E]ven if [an] alleged oral [contract] could have been performed in less than a year," it is barred by this statute if "it actually last[s] for more than one year." *Bell Fuels, Inc.*, 2000 WL 305955 at *3. Here, the complaint alleges that the distributorship agreement commenced on April 1, 2007, Compl. ¶ 8, and continued until at least May 9, 2009, Compl. ¶¶ 20, 24. Performance thus "actually lasted for more than one year." *Bell Fuels, Inc.*, 2000 WL 305955, at *3. "[T]herefore, it is [also] barred by the general Statute of Frauds." *Id.*

## C. IGF Has Failed To State a Claim in Count III for Misrepresentation

Count III of IGF's complaint should also be dismissed. Count III seeks relief for two purported misrepresentations — one pertaining to Soyyigit's trademark rights; the other pertaining to the claimed exclusive distributorship. The allegations asserted in this count of the Complaint, however, fail to state a claim upon which relief may be granted.

### 1. The alleged representations regarding Soyyigit's trademark rights are not actionable.

In support of its Count III for misrepresentation, IGF first contends that Soyyigit claimed that it "was the owner of a KBT mix powder drink and related KBT products" and that "it had an absolute right to advertise, market and sell in the United States." Compl., Count III ¶ 29. IGF further contends that, "in fact, Soyyigit did not have this right, based upon various trademark registrations of General Mills, as well as <u>unapproved</u> trademark applications before the US

Patent & Trademark Office." Compl., Count III ¶ 30. These allegations fail to state a claim for at least two reasons.

First, under Federal Rule of Civil Procedure 9, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires the pleader to "state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *A.I. Credit Corp. v. Hartford Computer Group, Inc.*, 847 F. Supp. 588, 598 (N.D. Ill. 1994) (citation omitted). "By requiring the plaintiff to allege the who, what, where and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Here, however, the complaint is devoid of any such information. There are no allegations particularly stating when, where, to whom, or by whom, the alleged misrepresentation was made. Nor is there any "specific content" provided. The Complaint contains nothing more than the vague and conclusory assertion that Soyyigit "represented to IGF that it had an absolute right." This falls far short of Rule 9(b)'s pleading requirements. Accordingly, Count III must be dismissed to the extent it relies on the alleged misrepresentation regarding trademark rights.

Second, Count III is further deficient because Soyyigit's alleged statements regarding its trademark rights — even if properly pleaded — are representations of law, and "[a]s a general rule, one is not entitled to rely upon a representation of law since both parties are presumed to be equally capable of knowing and interpreting the law." *City of Aurora v. Green*, 126 Ill.App.3d 684, 688 (2nd Dist. 1984). In *Hamming v. Murphy*, for example, the alleged fraudulent misrepresentation made to the plaintiff-buyer was that "all zoning 'red tape' had been taken care

of so as to permit construction of apartments" on the property. *Hamming v.Murphy*, 83

Ill.App.3d 1130, 1133 (2nd Dist. 1980). The Illinois Court of Appeals found this

misrepresentation to be inactionable and explained:

> The existing zoning of the property and the procedures under which a zoning ordinance could be modified, or a variance or permit could be granted, ***are a matter of public record available to both parties***. We conclude plaintiff was charged with knowledge of the permitted uses of this property under applicable zoning ordinances and cannot base her action for rescission on any contrary representations made by defendant.

*Hamming*, 83 Ill.App.3d at 1135 (emphasis added); *see also City of Aurora*, 126 Ill.App.3d at

688 (same).

Similarly here, Soyyigit's trademark rights with respect to the KENT BORINGER TRIX

mark comprise a question of law, and Soyyigit's alleged statement that it had "all the necessary

trademark rights to the products being sold under the Kent Boringer Trix Drink mix trademark,"

even if made, was a legal opinion and not a statement of fact. Moreover, Soyyigit's trademark-

related filings — as well as those of General Mills and any other users of "Trix"-related marks

— are matters of public record. Thus, just like the plaintiffs in *Hamming* and *Aurora*, IGF as a

matter of law is "charged with knowledge of the permitted uses of [the intellectual] property" at

issue. Accordingly, even if IGF could amend its complaint to satisfy Rule 9(b)'s heightened

pleading requirement, Count III still fails as a matter of law to the extent it is predicated upon

alleged misrepresentations concerning Soyyigit's trademark rights.

> 2.    The alleged representations regarding exclusivity are not <u>actionable</u>.

Count III additionally appears to be based upon an alleged misrepresentation that IGF

would be Soyyigit's exclusive distributor. *See* Compl., Count III ¶¶ 31-33. These allegations

also fail to state a claim upon which relief may be granted.

First, the allegations regarding exclusivity fail to satisfy the Rule 9(b) pleading standard. There are no allegations regarding *where* the supposed misrepresentation was made, *by whom* it was made, or *to whom* it was made. *A.I. Credit Corp.*, 847 F. Supp. at 598 n.3 ("[T]he identity of the persons to whom misrepresentations are made is one of the 'particulars' which must be pleaded."); *Ara Envt'l Servs., Inc. v. College*, No. 85 C 1314, 1986 WL 2532, at *2 (N.D. Ill. Feb. 7, 1986) (dismissing fraud claim for lack of particularity where plaintiff was "not specific as to the time, place and manner of the alleged misrepresentations" and failed "to plead what in fact was said or who made the alleged misrepresentations"). For this reason alone, Count III should be dismissed to the extent it is based upon an alleged misrepresentation of exclusivity.

Second, Illinois law "generally bars recovery for 'promissory fraud,' the situation in which A induces B to rely on a promise which A has no intention of keeping." *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, 2 F. Supp. 2d 1058, 1060 (N.D. Ill. 1998); *Rennick v. Contel Corp.*, No. 87 C 20292, 1989 WL 197433, at *4 (N.D. Ill. Nov. 21, 1989) ("The well-settled general rule in Illinois is that breach of a future promise is not actionable as fraud."); *Zaborowski v. Hoffman Rosner Corp.*, 43 Ill.App.3d 21, 25 (2nd Dist. 1976) ("It is not enough, however, that the party make a false promise not intending to keep it . . . .").

As the Seventh Circuit has recognized, "promissory fraud is a disfavored cause of action in Illinois." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). The allegations in this case fall squarely within this rule. The only facts alleged by IGF's complaint are that Soyyigit made a promise, never intending to keep it, and that IGF relied on it by agreeing to "buy, sell, market and advertise" Soyyigit's products. Compl., Count III ¶¶ 32-33. Such allegations are insufficient as a matter of law to state a claim for fraud. *See Radioactive Energy of Ill., LLC v. GZ Gourmet Foods & Beverage, Inc.*, No. 08-cv-311, 2009 WL 458616, at *5-6 (N.D. Ill. Feb.

24, 2009) (holding that a defendant's promise that "plaintiffs would be the exclusive

distributors" referred "to promises, not existing facts" and thus the alleged misrepresentations

were "not actionable as fraud").

## CONCLUSION

For all the foregoing reasons, Defendant Soyyigit respectfully requests the Court to

dismiss Plaintiff's complaint in its entirety, with prejudice.

Date:  September 10, 2010

s/James J. Sipchen
James J. Sipchen (IL Bar No. 6226113)
Amy J. Thompson (IL Bar No. 6244011)
Matthew J. Ligda (IL Bar No. 6229719)
Pretzel & Stouffer, Chartered
One South Wacker Drive - Suite 2500
Chicago, Illinois 60606
Telephone:    (312) 578-7442
Fax:              (312) 346-8242
E-Mail:        jsipchen@pretzel-stouffer.com
*Attorneys for Defendants,*
*Soyyigit Gida Sanayi Ve Ticaret Anonim Sirketi*


Of Counsel:
Michael A. Grow
Eric S. Baxter
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 857-6000 (telephone)
(202) 857-6395 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the **Motion to Dismiss and Memorandum of Law** was filed electronically this 10th day of September, 2010. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and/or by facsimile transmission and Standard U.S. Mail (only where indicated). Parties may access this filing through the Court's electronic system.

Joseph M. Williams
810 N. Arlington Heights road
Itasca, IL 60143
(630) 346-4472

<div style="margin-left:40%">

s/James J. Sipchen
James J. Sipchen (IL Bar No. 6226113)
Amy J. Thompson (IL Bar No. 6244011)
Matthew J. Ligda (IL Bar No. 6229719)
Pretzel & Stouffer, Chartered
One South Wacker Drive - Suite 2500
Chicago, Illinois 60606
Telephone:    (312) 578-7442
Fax:              (312) 346-8242
E-Mail:          mligda@pretzel-stouffer.com
*Attorneys for Defendants,*
*Soyyigit Gida Sanayi Ve Ticaret Anonim Sirketi*


Of Counsel:
Eric S. Baxter
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 857-3440
       Fax: (202) 857-6395
baxter.eric@arentfox.com

</div>