UNITED SATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| INTERNATIONAL GOLDEN FOODS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10 cv 906 |
| ) | |
| SOYYIGIT GIDA SANAYI VE TICARET ) | |
| ANONIM SIRKETI, et al. ) | |
| ) | |
| Defendants. ) | |

## RESPONSE TO DEFENDANTS' MOTION TO DISMISS

NOW COMES the Plaintiff, INTERNATIONAL GOLDEN FOODS, INC., by and through its Attorney, Joseph M. Williams, and responding to Defendant, SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI's Motion to Dismiss, states as follows:

## INTRODUCTION

The Plaintiff, INTERNATIONAL GOLDEN FOODS, INC. (hereinafter "IGF") filed this cause on February 10, 2010. Unbeknownst to the Plaintiff, until October 26, 2010, the Defendant, SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI (hereinafter "SOYYIGIT") filed its Motion to Dismiss on September 10, 2010. After receiving an extension of time to respond thereto, IGF sought leave to file an amended complaint, which this court denied. Pursuant to the Court's order of December 13, 2010, this is IGF's response to SOYYIGIT's Motion to Dismiss.

## FACTS

IGF has been in business for over twenty-five (25) years in the import, export, selling, distributing and marketing of food products (see Complaint, ¶5). In April 2007, SOYYIGIT orally sought IGF to become its <u>exclusive</u> USA sales representative for its fruit-flavored powdered drink mixes, sold under the name TRIX and KENT BOLINGER TRIX (see Complaint, ¶8). All of the products under this brand name contained in bold writing the words:

> **"Imported and Distributed Exclusively by**
> **International Golden Foods, Inc., Chicago, Illinois.**
> **Telephone (800) 343-7423—(773) 764-333…"**

(See attached **Exhibit A**).

In May 2009, General Mills IP Holdings II, LLC (hereinafter "General Mills"), filed a trademark infringement action against <u>both</u> parties to this cause, in the U.S. District Court of Minnesota, Case No. 09 CV 01010. Subsequently, that Court entered a preliminary injunction

on June 23, 2009, which required IGF and SOYYIGIT "immediately remove from sale or display, and recall, any and all products, catalogs, advertisements, and any other items or goods bearing TRIX, KENT BORINGER TRIX, . . . or any word or words confusingly similar thereto" and further enjoined the parties herein from using these products and "advertising, displaying, selling or otherwise distributing (whether physical or electronic form) any and all advertisements, marketing or promotional materials . . . containing TRIX, KENT BORINGER TRIX . . .".

Prior to this injunction, in 2007, SOYYIGIT had represented to IGF that it had all the required trademark rights to the products being sold under the names TRIX or KENT BORINGER TRIX (see Complaint, ¶10). SOYYIGIT, in 2008 also was involved in a trademark opposition proceeding in the US Trademark Office, which opposition was filed by General Mills as against SOYYIGIT'S application to register its TRIX trademark for drink mix. Subsequent to the alleged "exclusivity" agreement between the parties, SOYYIGIT sold its TRIX, KENT BORINGER products through distributors other than IGF (see Complaint, ¶14). SOYYIGIT also sent emails to IGF indicating that it was making a sale of two containers of product to a customer in the U.S. However, as such a sale would violate the exclusivity agreement with IGF, SOYYIGIT agreed to pay a commission to IGF on that sale. Such actions show the actual conduct of Soyyigit in performing in accordance with the exclusivity agreement it made with IGF and it maintained with IGF subsequent to its original actions. These acts were continuous and ongoing by SOYYIGIT, even though its ongoing impression of the "exclusivity" legend (see Exhibit A) continues to be imprinted on all of the products being sold in the USA, irrespective of the seller (see Complaint, ¶15).

That as a by-product of these acts by SOYYIGIT, General Mills filed its action, believing that IGF was, in fact, the exclusive distributor of these products on behalf of SOYYIGIT (see Complaint, ¶16). A second injunction was entered on or about August 22, 2009, which prohibited any sale or advertisement of TRIX drink mix by Soyyigit or IGF. An appeal of that injunction was filed as well as an ancillary appeal of the ruling that initially kept the General Mills' action in Minnesota. Soyyigit and IGF jointly sought to move the case to Illinois for the convenience of IGF, as IGF had made no sales in Minnesota, IGF's headquarters were in Illinois and due to the fact that all distribution of TRIX by IGF originated and were conducted from Illinois. It was not until discovery was initiated in the General Mills case, and after appeals of the injunctions and appeals of the jurisdiction of the General Mills suit were filed,87z that IGF first learned that it was not in fact the exclusive distributor of SOYYIGIT's TRIX and related products. As a result of learning of the extensive sales by Soyyigit in Minnesota and other states, the bases for both appeals were negated by facts which Soyyigit failed to disclose to its "exclusive" distributor, nor were those important jurisdictional facts conveyed to Soyyigit's then counsel.

IGF retained its longtime Illinois counsel and was forced by the rules to retain local counsel in Minnesota to represent its rights in the General Mills litigation. Once SOYYIGIT was served, it retained the same counsel. The parties to this cause entered into a joint defense agreement with both local counsel, as well as Minnesota attorneys, which agreement included the sharing of documents between the parties, principally due to the "exclusivity agreement" wherein IGF was the "exclusive" distributor, and held the exclusive seller rights as to the SOYYIGIT TRIX drink mixes. Both Soyyigit and IGF signed a joint defense agreement, and both were informed and agreed that if there was a situation where the rights of one could be

affected by the joint representation, that they both agreed to representation by Ms. Schoetty. At all times relevant hereto, the information of both parties was made use of freely and openly to reach the <u>joint</u> goal of defending both parties' interests in the General Mills litigation.

The defense of the parties in this cause included SOYYIGIT's <u>providing</u> of documents which would allow its exclusive agent, IGF, to verify shipments, dates of shipments to the USA and the verifications of the locations of the sales of these products, particularly in the State of Minnesota, where that action was filed. The oddity of this fact is that IGF had only two minimal sales in Minnesota. This fact formed the basis of defense counsel's unsuccessful efforts to transfer the cause to Chicago for the convenience of both defendants and to save expenses.

Messrs. Temel and Aydin Soyyigit traveled to Chicago in early July for several meetings with IGF, and counsel During the course of those meetings, the exclusive distributor agreement was affirmed by Soyyigit, and both Soyyigit and IGF entered into the previously referenced joint defense agreement, along with agreements as to the payment of fees to counsel and payment of litigation related expenses. The key to this agreement was the <u>joint</u> sharing and usage of documents during the discovery and presentation of evidence in an effort to dissolve the injunction and its subsequent interlocutory appeal.[1]

As recently as June 2010, SOYYIGIT was found to be in contempt of the Minnesota Court's injunction order of June 2009. SOYYIGIT was also found to be in contempt of the August 2009 injunction for blatantly advertising, selling and distributing samples of "TRIX" powdered drink mixes and gelatin mixes at the Fancy Food Show operated by the National Association for the Specialty Food Trade. This action was brought by IGF to seek reimbursement caused by SOYYIGIT's breaches of its agreements and attendant misrepresentations.

## ARGUMENT

I.  **BREACH OF CONTRACT--COUNT I**

    A.  **THE LAW**

In order to state a cause of action for breach of contract, one must allege:

(a) The existence of a contract between plaintiff and defendant; and
(b) Performance by plaintiff of the conditions imposed upon him/it, by the contract; and
(c) Breach; and
(d) Damages resulting from the breach.

<u>Payne v. Mill Race Inn</u>, 152 Ill.App.3d 269, 105 Ill.Dec. 324, 504 N.E.2d 193, 196 (2d5t Dist.

---

[1] The appeals by Soyyigit were withdrawn by counsel after General Mills provided ironclad evidence that Soyyigit was making numerous sales of TRIX in Minnesota, as it had done for the prior three years, through and including the entire time period of IGF's "exclusivity" contract with Soyyigit. Thus, IGF was not Soyyigit's exclusive distributor and continues (even TODAY) to sell and offer for sale the TRIX branded products in the U.S. generally and in Minnesota in particular.

1987). The allegations of the complaint must set forth the facts "sufficient to indicate the existence of a contract," including offer, acceptance and consideration. Payne, supra, @ pg. 197.

Valuable consideration is some "right, interest, profit or benefit accruing to one party, including a third party..." or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." F. H. Prince and Co. v. Towers Financial Corp., 275 Ill.App.3d 792, 211 Ill.Dec. 950, 656 N.E.2d 142, 147 (1st Dist. 1995). So as to ensure its enforceability, the terms of the agreement must be adequately "definite and certain so that a court can determine what the agreement of the parties was, and what conduct constituted a breach." Bensdorf & Johnson, Inc. v. Northern Telecom, Ltd., 58 F.Supp.2d 874, 877 (N.D. Ill., 1999).

Contracts are construed as enforceable if the court can, from its terms and conditions, "under proper rules of construction and applicable principles of equity" determine what the parties intended to do. Bensdorf, supra, @ pg. 877. Finally, every contract, as a matter of law, includes a duty of good faith dealing. Perez v. Citicorp Mortgage, Inc., 301 Ill.App.3d 413, 234 Ill.Dec. 657, 703 N.E. 2d 518, 525 (1st Dist. 1998).

These implied covenants, good faith and fair dealing, are considered when one party to an agreement has broad discretion in its performance. Good faith obligates the party vested with discretion, to act reasonably and with proper motive. He should not act arbitrarily, capriciously or in a manner inconsistent with their reasonable expectations. Perez, supra, @ pg. 528.

**B.     THE FACTS**

The premise upon SOYYIGIT's Motion to Dismiss Count I is based upon pure speculation, as well as blatant and flagrant falsities on the part of the movant. It states that IGF "fails to allege that either it or SOYYIGIT gave informed consent to a highly predictable conflict of interest, which, in fact, has arisen between them" (see Motion, ¶A, pg. 4). Nothing could be further from the truth and that assertion, based upon the actual facts, will be eventually evidenced as sanctionable under Federal Rule 11. As SOYYIGIT has done throughout its relationship with IGF, the suggestion of a conflict is, at best, blasphemous. Attached hereto and made a part hereof is the Affidavit of local counsel, Elizabeth Schoettly (hereinafter "Schoettly"). As she has stated to other counsel for SOYYIGIT, at all times relevant hereto, SOYYIGIT and IGF engaged in a joint, shared defense against the legal action filed by General Mills, in Minnesota.

Ultimately, the evidence and testimony will prove that SOYYIGIT co-joined in innumerable discussions with IFG and Schoettly, who, at all times relevant hereto, whereby the parties in this cause acted in concert as to the providing of documents, dates and places of sales, shipments, verifications of, and locations of the sales of TRIX products and similar information necessary to both respond to the litigation and answer discovery provided by General Mills.

In early July 2009, IGF, SOYYIGIT and Schoettly met at IGF's offices in Bensenville, Illinois to both enter into this agreement, analyze the facts and prepare their joint defense. At no time, in any manner, during these initial phases of their agreement, was there any hint of a

conflict in defending the claims being made against them. Only when it was learned in October, 2009, that SOYYIGIT's "exclusive" agreement and/or feigned compliance with the Court ordered injunction were being violated, did there become a division of the respective interests of each party. Prior thereto, SOYYIGIT paid attorney's fees to both Illinois and Minnesota counsel so as to assist in the joint defense of its interests in the Minnesota litigation.

Most of the cases recited by SOYYIGIT are inapplicable to the facts of this case. As was stated in re *Estate of Feinberg*, 235 Ill.2d 256, 263 (2009):

> "Whether an agreement is contrary to public policy depends on the particular facts and circumstances of the case."

SOYYIGIT 's premise(s) are based on suppositions that because certain verbiage has not been alleged in Count I, the oral agreement between the parties "allowed IGF to control the litigation, while Soyyigit simply paid", evidencing a want of consideration.[2] There are absolutely no facts in existence that support this conclusion. If there is a necessity to supplement the language and allegations of Count I as to certain defects or a lack of specificity as to the duties, rights and responsibilities of the parties, that can readily be cured by an amended pleading, but by no means is it a basis for dismissal of Count I.

As was stated in *Vine St. Clinic v. Healthlink, Inc.*, 222 Ill.2d 276, 294 (2006), the courts are "reluctant to declare a private contract as void as contrary to public policy." In filing a 12(b)(6) motion, the complaint's sufficiency is not inadequate just because it fails to anticipate potential defenses. *Woods v. Southwest Airlines*, 523 F.Supp. 812, 820 (2007). Further, the Court must construe all well pleaded facts, as true and draw all reasonable inferences in favor of the Plaintiff. *Woods*, supra @ pg. 820. In reviewing SOYYIGIT's motion, these inferences are alleged to be wholly opposite of what the law requires a Court to examine in analyzing the viability of the allegations of a complaint. Therefore, the Court should deny the motion on this basis.

Each of SOYYIGIT's arguments presupposes a conflict and thereby an ethical violation of the duties of counsel for the parties. There is <u>not</u>, however, any supportive facts of this conclusionary supposition. The test, in the case law, to make this determination is whether or not the agreement is capable of producing harm, such that its enforcement would be against the public interest. *O'Hara v. Ahlgren Blumfeldt & Kempster*, 127 Ill.2d 333, 339, 537 N.E.2d 730, 130 Ill.Dec. 401 (1989). That court went on to state as page 341:

> …where the parties to a contract … are in *pari delecto* or equally at fault, a court will not aid either party, but will leave both parties where it finds them … which Rule is designed not to help either party, but rather to protect the public.

---

[2] It is ironic that this is suggested by the Defendant, in this motion, since Soyyigit hardly paid anyone it retained or owes, including both of its Illinois and Minnesota counsel.

5

In analyzing Count I of the Complaint, there is no foundation to support the tenets of SOYYIGIT's Motion to Dismiss. As a result, the Motion to Dismiss Count I should be denied.

## II.  COUNT II—EXCLUSIVITY AGREEMENT

### A.  ARGUMENT

Soyygit's Motion is premised on the lack of any indicia of a written contract for the exclusivity in IGF's representation of the TRIX product in the U.S. The actual conduct of Soyyigit makes this argument inapt to the circumstances. Why?

Soyyigit's conduct renders its statements regading a lack of agreement as to exclusivity with IGF ridiculous. An exclusivity agreement as to trademarks is determined by several factors, the most important among them the perception of the public as to the source of, quality of, and origin or, goods or services relative to the sale of product. The major indicia of exclusivity in this case is the representations of Soyyigit itself as to the exclusivity arrangement as printed on the cans and containers themselves. The principal reason that IGF was sued in the General Mills case was that, despite having made no sales to any of the shops or chains where TRIX was found in Minnesota, the legend identifying IGF was clearly printed on the cans. Thus, the purchasing public, including investigators for General Mills, believed their eyes when viewing the cans of TRIX. The label said "exclusive" as to IGF, therefore General Mills treated IGF as the sole agent, exclusive distributor of the Soyyigit product. (See Exhibit A.)

Counsel for Soyyigit would have this Court believe that from the date of inception of the General Mills lawsuit, if not earlier, Soyyigit had no intent to honor its agreement with IGF as to IGF's exclusive right to distribute TRIX drink mix in the US. Perhaps this action of distribution of the TRIX drink mix by Soyyigit using other distributors, i.e. not IGF, in Minnesota was the precise sort of action that got Soyyigit cited for, and properly labeled a contemnor of the injunction orders entered in the District Court of Minnesota in July, 2010.

The intent of the parties regarding the arrangement for distribution of TRIX drink mix was clear. Soyyigit wanted IGF to be its sole distributor, and confirmed this intent through emails, including offering a 'commission' for a sale that was made directly by Soyyigit, for the very products it labeled with IGF's name and information early on in the exclusivity arrangement. (See Group Exhibit A and B.) By these emails, Soyyigit confirmed its agreement and the meeting of the minds of both Soyyigit and IGF regarding TRIX drink mix distribution. Thus, whether the license was labeled on paper or not, the agreement was clearly for there to be a license and distribution agreement between IGF and Soyyigit. Exclusive or not, there was a distribution agreement.

At the time General Mills filed its suit, IGF had been acting as if there was an exclusivity arrangement, and the reason both parties sought the same counsel to represent them was based upon the exclusive nature of the distribution agreement. Only after discovery was well underway, and only when presented with evidence that Soyyigit was violating its agreement with IGF, did counsel for both parties realize that nothing Soyyigit had represented in the several meetings and innumerable emails and telephone conversations had been forthright. Soyyigit had never honored its agreement to use IGF as its sole distributor in the US, as printed on containers,

as discussed with Mansour Amiran, president of IGF, nor in its sales to, in particular, customers in Minnesota.

This became evident to IGF when, after IGF had informed all of its customers that it was immediately ceasing all distribution of TRIX drink mix, sales of hundreds and thousands of units of TRIX drink mix were discovered in Minnesota, even months after IGF had recalled and stopped all its distribution efforts regarding the infringing TRIX drink mix. (See letter of IGF to its customers of May, 2009, attached hereo and made a part hereof as **Exhibit D**.) And yet, even after the injunction was entered in June, and confirmed again in August, 2009, TRIX drink mix continued to flow into the markets in Minnesota, despite absolutely no sales into that state by the named exclusive distributor, IGF.

As a result of those sales into Minnesota, IGF was charged in a motion for contempt of Court, in the June 2009 injunction prohibiting all sales of TRIX in the US pursuant to the motion for injunction sought by General Mills. While IGF had fully complied with every provision of that injunction, even stopping all sales and advertisement of TRIX a month prior to the entry of the injunction order, IGF incurred thousands in extra legal fees defending itself in additional discovery, including depositions and numerous legal filings, against the contumacious conduct of Soyyigit, which had been unknown to IGF.

At the inception of representation of Soyyigit and IGF in the General Mills suit, both Soyyigit and IGF stood in the precisely identical position of distributing TRIX drink mix, through the marketing efforts of IGF, and pursuant to a license to that effect. That was the impetus for the parties signing a joint defense agreement. The identical nature of the liability of both parties defendant meant that there was no meaningful, identifiable or reasonable belief that there was any divergence between the defendants as to interest, legal jeopardy, obligations between IGF and Soyyigit or any performance of any actions required by either IGF or Soyyigit.

As IGF was, at that time, the sole agent of Soyyigit in the US, a fact confirmed by the emails and communications of Soyyigit, both Soyyigit and IGF had identical interests to protect as far as US trademark infringement law was concerned. To that end, both IGF and Soyyigit entered into a joint defense agreement, which agreement set forth the clearly understood agreement that the two parties had, at the time of that agreement, identical interests relative to the General Mills suit, and that the parties would fully cooperate in defending the suit, including but not limited to the sharing of documents with counsel and with each other.

Count II of the Complaint as filed sets forth sufficient allegations to show that a license had been set forth. If not, repleading may be appropriate but clearly, dismissal would not be. The reason is simple. A pleader need only set forth sufficient statements that a claim exists and that the pleader is entitled to relief. Clearly there was a license and the Soyyigit TRIX drink mix was the prime motivator for General Mills to file a trademark infringement complaint against Soyyigit, as well as IGF. It has to be obvious that IGF sold the TRIX drink mix for the benefit of Soyyigit, and incurred litigation expenses due to the actions of Soyyigit in violating the injunctions issued by the Minnesota court. IGF has set forth sufficient facts to show that Soyyigit had agreed to indemnify it, for all pleadings are to be taken as true in a 12(b)6 motion. As well, IGF has stated its understanding of the relationship with Soyyigit, a relationship confirmed by the very emails and notices printed on all cans and packages of TRIX drink mix sold in the US. [See: *Bell Atlantic Corp.* v. *Twombly*, 550 U. S. ___,___ (2007) (slip op., at 7.8) (quoting *Conley* v. *Gibson*, 355 U. S. 41, 47 (1957)), as cited in *Erickson v Pardus, 551 US ___.]*

It is by now well established that a plaintiff must do better than put a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her/him, which might be redressed by the law. Cf. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), disapproved by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007) ("after puzzling the profession for 50 years, this famous observation [the 'no set of facts' language] has earned its retirement"). The question with which courts are still struggling is how much higher the Supreme Court meant to set the bar, when it decided not only Twombly, but also *Erickson v. Pardus,* 551 U.S. 89 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). This is not an easy question to answer, as the thoughtful dissent from this opinion demonstrates. On the one hand, the Supreme Court has adopted a "plausibility" standard, but on the other hand, it has insisted that it is not requiring fact pleading, nor is it adopting a single pleading standard to replace Rule 8, Rule 9, and specialized regimes like the one in the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2). [*Swanson v Citibank*,_____ No. 10-1122 (7th Circuit, 2010)

Any reasoned, and reasonable, reading of Count II would show, of necessity, that the requirements for pleading have been adequately met. And, while the claims as made surely show that wrongs occurred, there is also a need to amend certain of the Counts to conform with information and facts that were learned of after the filing of the original complaint in this case.

## III. COUNT III – MISREPRESENTATION

### A. THE LAW

Fraudulent misrepresentation under Illinois law requires the pleader to assert:

(a) that the defendant made a statement;
(b) of a material nature;
(c) which was untrue;
(d) known by the person making it to be untrue or made in culpable ignorance of its truth or falsity;
(e) relied upon by the victim to his detriment;
(f) made for the purpose of inducing reliance; and
(g) the victim's reliance led to his injury.

*Bensdorf & Johnson, Inc. v. Northern Telecom, Ltd.*, 58 F.Supp.2d 874, 883 (n.Dist. Ill. 1999). In Illinois, the Courts do not <u>recognize</u> a cause of action for promissory fraud; therefore, the misrepresentation being alleged must relate to a part or present fact, not a future or contingent event. See *Bensdorf*, supra @ pg. 883. The present facts show fraud on the part of SOYYIGIT plainly. If the Plaintiff evidences that the misrepresentations are part of a "scheme to defraud," the Illinois courts make an exception to this rule. *Bensdorf*, supra, @ pg. 883. Why? In part, because in Illinois the Courts do not want to permit every contract case to become a claim for fraud. As a result, merely making assertions at the time the misrepresentations are made, but which were not intended to be followed, is insufficient to state a cause of action for fraud. The complaint does make those required averments, and sets forth details necessary to show fraud by SOYYIGIT, both in the past and ongoing through their distribution of TRIX drink mix in the US.

8

The Courts in our State have defined a "scheme to defraud" is usually alleged and proven by showing that a defendant intended to induce the plaintiff to act for the defendant's benefit, in reliance on the misrepresentation. *Bensdorf*, supra @ pg. 884. Cases suggest that promissory fraud is actionable if it is particularly egregious or is part of a "larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Prue v. Highland Community Bank*, 722 F.Supp. 454, 460 (N.D. Ill. 1989). When a promissor intends for the false representation to induce the promise to act, for the promissor's benefit, it is actionable. *Concord Industries, inc. v. Harvel Industries Corp.*, 122 Ill.App.3d 845, 462 N.E.2d 1252, 78 Ill.Dec. 898 (1st Dist. 1984).

In Federal Court, pursuant to Rule 9(b), a plaintiff must allege "in all averments of fraud or mistake, the circumstances constituting fraud or mistake . . . with particularity." This requires the pleader to allege when the misrepresentation were made; where; the substance of the misrepresentation; identity of the party making them and its consequences. *A.I. Credit Corp. v. Hartford Computer Group*, 847 F.Supp. 588, 597 (N. Dist. Ill. 1994). This particularity, unique to federal notice pleading, is similar to the requirements of Illinois law, a fact-pleading State. See *A.I. Credit Corp.*, supra @ pg. 598.

**B.     ARGUMENT**

Count III of the Complaint alleges that Soyyigit made an agreement for IGF to be SOYYIGIT'S exclusive distributor, on or about April 1, 2007 (see Complaint, ¶8). Attached to this response, as **Group Exhibit B,** are eight (8) separate letters whereby Soyyigit tells this fact to differing vendors. **Exhibit A** is a picture of a can of TRIX drink mix declaring IGF as the exclusive distributor. Since 2007, many thousands of cans of these TRIX-related products have been sold by IGF and unknown others. In June and again August 2009, injunctions were entered, prohibiting its sale. Recently, IGF agents have purchased TRIX drink mix products, which continue to announce IGF as the exclusive distributor (see Complaint, ¶31). However, since May of 2009 (see **Exhibit C**), IGF has not only stopped the sale(s) of these products, but been forced to destroy, under Court order, over $100,000.00 of these products, in addition to the costs of the products IGF sold, which product costs were paid to Soyyigit.

In addition, IGF expended substantial sums in an effort to market and promote these products (see Complaint, ¶33). Each and every element of fraudulent misrepresentation is alleged in the Complaint. A simple review of the elements in conjunction with the allegations pled in Count III evidence no gaps or failure to plead, with the particularity required and the substantial damages incurred. In blatant violation of the injunction, SOYYIGIT advertised, took orders, and gave samples of the very TRIX drink mix that was the subject of the injunction, at the same Fancy Food Show in 2007 that led to the Minnesota court finding SOYYIGIT in contempt, with associated sanctions against SOYYIGIT for its ongoing failures to obey U.S. laws. Soyyigit is flaunting its conduct at IGF, the Minnesota Court and now this Court. It has failed to pay prior counselors, reimburse IGF for its losses, pay fees in conjunction with necessary local counsel in Minnesota, and now seeks dismissal of this Complaint, based upon more falsities.

What is Soyyigit's basis for dismissal? It is alleged that IGF seeks relief for two "purported misrepresentations" (see Soyyigit Motion, ¶C, pg. 8). The first relates to its trademark rights. IGF is not concerned about this failure. That is the domain of General Mills

and its continuing litigation against Soyyigit. Their attorneys conveniently attempt to suggest that this is one of the claims IGF is alleging. IGF, however, merely states the fact that Soyyigit did not have any trademark rights (see Complaint, ¶29) and/or that it would "handle any difficulties or issues such as the litigation filed by General Mills." In fact, this turns out to continue to be flagrantly false, but has caused, as a by-product, IGF to be included in the Soyyigit "wake" of litigation in Minnesota at great cost to IGF in monetary terms, efforts expended and associated detriment to IGF's reputation.

It is a fact that Soyyigit did <u>not</u> have US registration or other undisputed trademark rights to TRIX for fruit flavored drink mix. Could IGF have so learned on its own? Of course, but the representation that they would "handle any issues" is the real transgression. IGF's losses in this regard occurred <u>after</u> the General Mills lawsuit was filed, an injunction was entered against IGF, and ultimate settlement of IGFs portion of the Minnesota litigation occurred, that is, after May 2009. Could IGF have stated these facts with more particularity?—probably. Is there a need to capsulize this information in a more detailed manner?—perhaps. But has IGF stated a viable cause of action?—unequivocally.

Soyyigit also asserts that there are no misrepresentations as to the exclusivity. Either Soyyigit is <u>again</u> lying to its present counsel or its attorneys simply seek to wear blinders to the facts. IGF was told that it is the exclusive distributor; letters were sent to its vendors; marketing was created and pursued by IGF as the exclusive distributor, IGF developed markets as the exclusive distributor, and, most obviously, the plain statement of IGF as the exclusive distributor is on thousands and thousands of containers of TRIX drink mix, which Soyyigit, incredibly, continues to sell and market in the US in plain, balatant and egregious violation of the injunctive orders entered by the US District Court in Minnesota. It is absolutely beyond comprehension that Soyyigit's Motion completely obfuscates all of the salient acts and absolute facts which will eventually evidence and prove its misrepresentations to IGF, and its misdeeds surrounding its conduct in the General Mills litigation and before this, and the Minnesota Courts. There is absolutely no rational or legal basis to dismiss Count III, although if this Court desires, more detail can be immediately provided by IGF.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss should be denied, Plaintiff's Complaint should either stand as pled, or leave to supplement with more detail, and an amended complaint should be ordered.

Respectfully submitted,

By: /s/ Joseph M. Williams

Joseph M. Williams
Attorney for Plaintiff
810 N. Arlington Heights Road
Itasca, Illinois 60143
Tel: (630) 346-4472
Atty No. 03128789