UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| INTERNATIONAL GOLDEN FOODS, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>SOYYIGIT GIDA SANAYI VE TICARET ANONIM SIRKETI, *et al.*,<br><br>*Defendants.* | Case No. 10-CV-906 (CRN)<br><br>**DEFENDANT SOYYIGIT GIDA'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>The Honorable Judge Norgle<br>Magistrate Mason |

As set forth in Defendant Soyyigit's opening brief in support of its motion to dismiss, the Complaint filed in this matter by Plaintiff International Golden Foods, Inc. ("IGF") fails to state a claim upon which relief can be granted. IGF's memorandum in opposition to the motion to dismiss (the "Opposition") fails to cure the grounds for dismissal.[1] Instead, the Opposition is loaded with irrelevant facts that are neither alleged in the Complaint nor properly supported; attaches superfluous "exhibits"; and distorts both the Complaint and the legal standards applicable to Soyyigit's motion. In short, the Opposition does nothing to advance IGF's claims or to overcome Soyyigit's showing that dismissal is warranted. Accordingly, for the reasons set forth in Soyyigit's opening memorandum and as supplemented below, IGF's complaint should be dismissed in its entirety and without further delay.

---

[1] Indeed, IGF's Opposition fails even to comply with basic formatting requirements set forth in Local Rule 5.2, as the text is not double spaced and does not have left, right, top, and bottom margins of one inch. If properly formatted, IGF's Opposition would exceed the fifteen-page limit imposed under Local Rule 7.1, thus warranting its being stricken.

## ARGUMENT

IGF's Complaint raises three claims for relief. Count I alleges that Soyyigit breached an agreement to indemnify IGF for attorneys' fees incurred in a litigation in Minnesota in which the parties were co-defendants. Count II alleges breach of an exclusive distributorship agreement. Count III asserts a claim of fraudulent misrepresentation. The Complaint, however—even when read in conjunction with the Opposition—fails to set forth facts sufficient to state a claim upon which relief may be granted under any of these causes of action. Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), all three claims should be dismissed.

### A. The Indemnification Agreement Pleaded by IGF Violates Illinois Public Policy and Lacks Definiteness and Consideration

Count I of IGF's Complaint alleges that Soyyigit breached an oral agreement to indemnify IGF for expenses IGF incurred in the Minnesota litigation. Soyyigit moved to dismiss on the ground that IGF failed to allege that Soyyigit had given *informed* consent to its joint representation with IGF, thus failing to allege the existence of an enforceable agreement to indemnify. In its Opposition, IGF insinuates that Soyyigit *did* give informed consent, citing as support an "Affidavit of local counsel, Elizabeth Schoettly" and "innumerable discussions with IFG [sic] and Schoettly." Opp'n at 4. However, IGF failed to attach any "Affidavit of . . . Elizabeth Schoettly" with its Opposition, and no such "Affidavit" has been filed with the Court or served on Soyyigit. Moreover, IGF has failed to provide any details regarding "discussions" Soyyigit allegedly had with IGF and Schoettly. Thus, even if one accepts the allegation that Soyyigit and IGF consented to joint representation, the Complaint and Opposition fail to allege facts sufficient to sustain a claim that the consent was *informed*. IGF's failure to allege that Soyyigit gave *informed* consent to the joint representation warrants dismissal, particularly in light of Soyyigit's status as a foreign defendant, its limited capacity to communicate in English,

2

and the highly problematic joint representation in the Minnesota litigation.[2] The relevant version of Rule of Professional Conduct 1.7, which governs joint representations, requires an "explanation of the implications of the common representation and the advantages and risks involved."[3] Both the Complaint and Opposition fail to allege that any such "explanation" of the attendant risks—including potential waiver of the attorney-client privilege—was ever given. ***Thus, even assuming the existence of an express waiver of conflict by Soyyigit***, the Complaint fails to state a claim upon which relief may be granted, because it fails to allege that the consent or waiver was "informed" as required under Rule 1.7.[4]

Moreover, even if Ms. Schoettly had made the appropriate disclosures and even if Soyyigit *knowingly* waived the conflict between it and IGF, Count I still should be dismissed. As shown in Soyyigit's motion, the alleged indemnification agreement is unenforceable because it lacks definiteness and consideration. *See* Soyyigit's Motion to Dismiss at 4-5. IGF has not and cannot rebut this argument. On its face, the Complaint fails to allege that IGF offered any consideration apart from the indefinite and ambiguous promise to "fully cooperate and assist counsel." Compl. ¶ 44. IGF offers no clarification as to what these terms might mean. Thus, there is no way for the Court to determine whether or when IGF itself breached the agreement.

---

[2] By way of example, in the Minnesota action, IGF entered into a settlement agreement and agreed to entry of a consent judgment containing false representations that are materially adverse to Soyyigit.

[3] *See* Repealed Version, ILCS Rules of Prof. Conduct, Rule 1.7, available at *http://www.state.il.us/court/supremecourt/rules/Art_VIII/ArtVIII.htm#1.7* (last visited Dec. 30, 2010). The current version of Rule 7.1 did not come into effect until June 1, 2010.

[4] IGF cites *O'Hara v. Ahlgren Blumfeldt & Kempster*, 127 Ill.2d 333 339 (1989), for the proposition that where the parties to a contract are "equally at fault, a court will not aid either party" on public policy grounds. Opp'n at 5. But here the parties are not equally at fault. Soyyigit was entitled to an express explanation from counsel of the risks inherent in joint representation. Neither the Complaint nore Opposition alleges that such an explanation was provided.

3

Such an agreement is unenforceable as a matter of law. *Kraftco Corp. v. Kolbus*, 1 Ill. App. 3d 635, 638, 274 N.E.2d 153, 155 (Ill. App. Ct. 1971) ("It is basic contract law that the terms of a contract must be reasonably certain; and when the material terms and conditions are not ascertainable no enforceable contract is created.") (quoting *Lee Shell Co., Inc. v. Model Food Ctr., Inc.*, 111 Ill. App. 2d 235, 244, 250 N.E.2d 666, 671); *Ken-Pin, Inc. v. Vantage Bowling Corp.*, No. 02 C 7991, 2004 WL 783092, at *3 (N.D. Ill. Jan. 20, 2004). Accordingly, regardless of whether Soyyigit gave informed consent to Ms. Schoettly's joint representation of both Soyyigit and IGF, Count I should be dismissed for failure to state a claim.

### B. The Exclusive Distributorship Agreement Alleged by IGF Violates the Statute of Frauds and Lacks Definite and Essential Terms

Count II fails for a similar reason. Illinois law provides that, to be enforceable, a contract for an exclusive distributorship must—*at a minimum*—state the duration of the contract and the distributor's sales quotas. *Ken-Pin, Inc. v. Vantage Bowling Corp.*, No. 02 C 7991, 2004 WL 783092, at *3 (N.D. Ill. Jan. 20, 2004) (stating that "duration and sales quotas" are "essential terms of a distribution agreement"); *Magid Mfg. Co. v. U.S.D. Corp.*, 654 F. Supp. 325, 333 (N.D. Ill. 1987) (same). Indeed, "[t]he lack of these terms is fatal to a general distributorship contract because it renders the contract unenforceable." *Bensdorf & Johnson, Inc. v. N. Telecom Ltd.*, 58 F. Supp. 2d 874, 877 (N.D. Ill. 1999). IGF has completely ignored this legal defect in its pleadings. The Complaint alleges an oral agreement with no definite terms, and the Opposition does not address the issue in any way. For this reason alone, Count II must be dismissed.

While completely ignoring the failure to allege essential terms, IGF attempts to refute Soyyigit's alternative ground for dismissal of Count II—*i.e.*, that it violates the statute of frauds. In an effort to identify a writing confirming the existence of an agreement, IGF points to (1) a Soyyigit product label stamped "Imported & Distributed Exclusively by International Golden

4

Foods"; (2) several emails from Soyyigit dated June 30, 2008, directing potential U.S. customers to "[o]ur sole agent . . . International Golden Foods, Inc.; and (3) an alleged act by Soyyigit in "offering [IGF] a 'commission' for a sale that was made directly by Soyyigit." Opp'n at 6 (citing Exhibits A & B). For at least three reasons, however, this alleged "evidence" fails to provide any basis for denying Soyyigit's motion to dismiss Count II.

First, no written exclusive distributorship agreement or any other writing is identified or properly authenticated in the Complaint. Moreover, with respect to the alleged "commission" purportedly offered by Soyyigit, the Opposition cites Exhibits A and B, neither of which supports the "commission" allegation in any way.

Second, even if IGF were acting as the Soyyigit's "sole agent" at the time the alleged emails were sent, that hardly provides a basis for concluding that Soyyigit had given IGF an exclusive distributorship covering the entire United States.

More importantly, even if the court fully accepts the evidence cited by in the Opposition, IGF still has failed to allege an enforceable contract or to satisfy the statute of frauds. Neither the label nor the emails set forth the duration, sales quotas, pricing scheme, or other essential terms of the alleged exclusive distributorship agreement. Under Illinois law, "[t]he lack of these terms is fatal to a general distributorship contract." 58 F. Supp. 2d at 878. Indeed, a distributorship agreement that "fixes no time for its operation" is "terminable at the will of either party." *Kraftco Corp. v. Kolbus*, 1 Ill. App. 3d 645, 639 (4th Dist. 1971). Thus, even if deemed to exist, such a contract would be unenforceable.

Similarly, neither the labels nor email satisfy the statute of frauds, which requires a writing "sufficient to indicate that a contract for sale has been made between the parties and ***signed by the party against whom enforcement is sought***." 810 ILCS 5/2-201(1) (emphasis

5

added); *see also Bensdorf & Johnson*, 58 F. Supp. 2d at 879 (noting that distributorship agreements are contracts for the sale of goods under Illinois law). Under this requirement, even where "[a] writing" indicates the existence of a contract, if it "omits or incorrectly states a term agreed upon[,] . . . the contract is not enforceable . . . ***beyond the quantity of goods shown in such writing***." *Id.* (emphasis added). Thus, Illinois and federal courts consistently require that a writing proffered as evidence of a contract ***must*** contain a quantity term. *See, e.g., Cent. Ill. Light Co. v. Consol. Coal Co.*, 349 F.3d 488, 490-91 (7th Cir. 2003) ("The documentation must enable an inference to be drawn that there *was* a contract, though once that has been established the parties are free to present oral evidence of the contract's terms—all but the quantity term, ***which must be stated in the writing that establishes compliance with the statute of frauds***.") (latter emphasis added). A writing which lacks a quantity term cannot satisfy the statute of frauds, and oral evidence cannot be admitted to supply that term. *Id.* (citing *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1181 (7th Cir. 1991)); *W. Metals Co. v. Hartman Co.*, 303 Ill. 479, 485, 135 N.E. 744, 746 (1922) (*cited in Monetti, S.P.A.*, 931 F.2d at 1181). Because the labels and emails proffered by IGF lack a "quantity" term, the statute of frauds is not met.

IGF's reliance on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937 (2009), to overcome these failings is misplaced. In *Twombly* and *Iqbal*, the Supreme Court jettisoned the "no set of facts" test that had controlled pleading and motion to dismiss standards since *Conley v. Gibson*, 355 U.S. 41 (1957). Instead, the Court now requires a complaint to contain "[f]actual allegations" sufficient "to raise a right to relief ***above the speculative level***." *Twombly*, 550 U.S. at 555 (emphasis added). Without allegations regarding the contract's duration, sales quotas, and so forth, IGF has failed to allege facts that would show the existence of an enforceable contract that satisfies the statute of frauds.

6

Accordingly, Count II should be dismissed because the contract as alleged lacks essential terms and violates the Statute of Frauds.

### C. IGF Has Not Stated a Cognizable Claim for Misrepresentation

Count III alleges that Soyyigit made false representations to IGF regarding (a) Soyyigit's alleged rights in the KENT BORINGER TRIX brand name and (b) IGF's alleged exclusive distribution rights. Soyyigit moved to dismiss Count III with respect to both alleged misrepresentations, because the Complaint fails to satisfy the heightened pleading standard applicable under Federal Rule of Civil Procedure 9(b). This rule requires a specific identification of the "who, what, where and when of the alleged fraud." *A.I. Credit Corp. v. Hartford Computer Group, Inc.*, 847 F. Supp. 588, 598 (N.D. Ill. 1994) (stating that "the rule requires the plaintiff to conduct a pre-complaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate"). IGF admits that it "probably" could have "stated these facts with more particularity." Opp. at 10. However, in its Opposition, IGF still fails to point to a single fact which satisfies the particularity requirement. Instead, IGF recites a list of unrelated allegations about Soyyigit's sales practices and a different lawsuit, and again refers the Court to the emails contained in Exhibit B. None of these allegations provide any detail whatever as to the requisite who, where, or what of Soyyigit's alleged misrepresentations. Because IGF has failed to meet the requirements of particularity set forth in the Rules, Soyyigit cannot formulate a proper defense. For these reasons alone, Count III should be dismissed. *See A.I. Credit Corp. v. Hartford Computer Group, Inc.*, 847 F. Supp. 588, 598 (N.D. Ill. 1994) (the pleader must "state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Ara Envt'l Servs., Inc. v. College*, No. 85 C 1314, 1986 WL 2532, at *2 (N.D. Ill. Feb. 7, 1986) (dismissing fraud claim for lack of particularity where plaintiff was "not

7

specific as to the time, place and manner of the alleged misrepresentations" and failed "to plead what in fact was said or who made the alleged misrepresentations").

Soyyigit also moved to dismiss the alleged trademark misrepresentations on the ground that Illinois does not recognize fraud claims for misrepresentations of law. Essentially conceding this point, IGF now claims that it never intended to assert a claim based on Soyyigit's representations as to its trademark rights. Opp. at 10. Instead, IGF insinuates that this idea somehow originated with Soyyigit's counsel. This assertion, however, is directly at odds with Count III, which reads—in relevant part—as follows:

> 29. That at the time of the agreement for exclusivity, SOYYIGIT was the owner of KBT mix powder drink and related KBT products *for which it represented to IGF that it had an absolute right to advertise, market and sell in the United States*.
>
> 30. That, in fact, SOYYIGIT *did not have this right* . . . .
>
> 31. That at the same time, IGF was advised by SOYYIGIT and, in fact made agreement with them, to have the "exclusive" right to advertise, sell and market these products.
>
> 32. That these agreements *and representations as to the right to sell* and exclusivity were made by SOYYIGIT with the intent and purpose of deceiving and defrauding IGF and inducing it to advertise, market and sell these products . . . to the detriment and expense of IGF.
>
> 33. That IGF believed and *relied upon these representations* and, in so doing, was induced to buy, sell, market, and advertise the KBT products of SOYYIGIT, paying, advancing and expending sums in excess of $89,000.00.
>
> 34. That as SOYYIGIT well knew at all times of the making, their representations were and are false, *in that it did not and does not have the right to use the TRIX trademark name in the USA* and did not and never has provided IGF with the "exclusive" right to market KBT products and it never intended to allow IGF this right *nor to complete its trademark application*.
>
> 35. That with this intent and for the purpose of inducing IGF to buy, advertise, market and sell the KBT products, SOYYIGIT falsely and fraudulent represented the claims *of its trademark rights* and exclusivity *to IGF*.
>
> 36. That as a result, IGF has sustained great damages(s) . . . .

8

Compl. Count III ¶¶ 29-36. These paragraphs show that Count III of the Complaint is indeed based upon alleged misrepresentations of law.[5] Because Illinois does not recognize such a claim for relief, Count III must be dismissed. *See City of Aurora v. Green*, 16 Ill. App. 3d 684, 688 (2nd Dist. 1984) ("As a general rule, one is not entitled to rely upon a representation of law since both parties are presumed to be equally capable of knowing and interpreting the law."); *Hamming v. Murphy*, 83 Ill. App. 3d 1130, 1133 (2nd Dist. 1980) (dismissing claims based on alleged misrepresentation of zoning rights because "[t]he existing zoning of the property and the procedures under which a zoning ordinance could be modified, or a variance or permit could be granted, are a matter of public record available to both parties."). IGF was fully capable of ascertaining the validity of Soyyigit's trademark rights by conducting its own trademark search, and thus was not entitled to rely upon any representations allegedly made by Soyyigit. In fact, the public records on file with the Patent and Trademark Office show that Soyyigit had applied to register the mark KENT BORINGER TRIX in June 2006, that Soyyigit never applied to register TRIX alone, and that Soyyigit never obtained a trademark registration for any mark containing the word TRIX.

Finally, Soyyigit also moved to dismiss Count III to the extent it alleges misrepresentations of exclusivity, because Illinois "generally bars recovery for 'promissory fraud.'" *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.* 2 F. Supp. 2d 1058, 1060 (N.D. Ill. 1998); *see also Radioactive Energy of Ill., LLC v. GZ Gourmet Foods & Beverage, Inc.*, No. 08-

---

[5] IGF's attempt to recast the trademark misrepresentation claim in its Opposition as one predicated on Soyyigit's purported promise to "handle any issues," Opp'n at 10, is also plainly inconsistent with the Complaint. IGF never alleged in the Complaint that Soyyigit promised to "handle any issues" with respect to its trademark rights. The Complaint merely states that Soyyigit "made oral representations that it had all necessary trademark rights," Compl. ¶ 10, "that it had no problems with the Kent Boringer Trix Drink Mix trademark," *id.*, and "that it had an absolute right to advertise, market and sell in the United States." Count III ¶ 29.

cv-311, 2009 WL 458616, at *5-6 (N.D. Ill. Feb. 24, 2009) (holding that a defendant's promise that "plaintiffs would be the exclusive distributors" referred "to promises, not existing facts" and thus the alleged misrepresentations were "not actionable as fraud").

IGF seeks to avoid application of this general rule by citing the exception that promissory fraud is actionable if it is "part of a 'larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." Opp'n at 9 (quoting *Price v. Highland Community Bank*, 722 F. Supp. 454, 460 (N.D. Ill. 1989)). Under Illinois law, a "scheme" or "device" to defraud sufficient to meet the exception must be the equivalent of a "carefully constructed plan of deceit." *Metro. Bank & Trust Co. v. Oliver*, 4 Ill. App. 3d 975, 978, 283 N.E.2d 62 (1st Dist. 1972). Further, for a "fraudulent scheme" exception to survive a motion to dismiss, the "clamant must be able to point to ***specific, objective manifestations of fraudulent intent***—a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992) (emphasis added).

Although noting the existence of this exception, IGF does not allege any facts or assert any arguments to show that it is applicable here. It does not allege that Soyyigit's purported misrepresentations regarding exclusivity were part of "a larger pattern of deceptions or enticements," *J.H. Desnick*, 44 F.3d at 1354, or that Soyyigit employed a "scheme or device" to defraud IGF. *Bower*, 978 F.2d at 1012. IGF has alleged only that Soyyigit made a statement about IGF's exclusivity rights, but "never intended to allow IGF this right." Compl. Count III ¶ 34. Accordingly, IGF's claim of misrepresentations regarding exclusivity, even if construed under the exception, fails to state a cognizable claim.

## CONCLUSION

For all of these reasons, Soyyigit respectfully requests the Court to grant its motion and dismiss IGF's Complaint in its entirety, with prejudice.

Date: January 3, 2011

Respectfully submitted,

/s/ *James J. Sipchen*
James J. Sipchen (IL Bar No. 6226113)
Amy J. Thompson (IL Bar No. 6244011)
Matthew J. Ligda (IL Bar No. 6229719)
Pretzel & Stouffer, Chartered
One South Wacker Drive - Suite 2500
Chicago, Illinois 60606
Telephone: (312) 578-7442
Fax: (312) 346-8242
E-Mail: *jsipchen@pretzel-stouffer.com*

*Counsel for Defendant Soyyigit Gida*

Of Counsel:
Michael A. Grow
Eric S. Baxter
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 857-6000 (telephone)
(202) 857-6395 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the **Defendant, Soyyigit Gida 's Reply Brief in Support of its Motion to Dismiss** was filed electronically this 3rd day of January, 2011. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

Joseph M. Williams
810 N. Arlington Heights road
Itasca, IL 60143
(630) 346-4472

                                                s/James J. Sipchen
James J. Sipchen (IL Bar No. 6226113)
Amy J. Thompson (IL Bar No. 6244011)
Matthew J. Ligda (IL Bar No. 6229719)
Pretzel & Stouffer, Chartered
One South Wacker Drive - Suite 2500
Chicago, Illinois 60606
Telephone:  (312) 578-7442
Fax:  (312) 346-8242
E-Mail:  mligda@pretzel-stouffer.com
*Attorneys for Defendants,*
*Soyyigit Gida Sanayi Ve Ticaret Anonim Sirketi*

Of Counsel:
Eric S. Baxter
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 857-3440
Fax: (202) 857-6395
baxter.eric@arentfox.com